528 S.E.2d 748

**STATE of West Virginia, Plaintiff Below, Appellant,**

v.

**Fred Salem ZAIN, Defendant Below, Appellee.**

No. 26194.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 5, 1999.

Decided Nov. 5, 1999.

**56**

James B. Lees, Jr., Special Prosecutor, Hunt & Lees, L.C., Charleston, West Virginia, Stephen G. Jory, Special Prosecutor, Jory & Smith, Elkins, West Virginia, Attorneys for the Appellant.

Arthur T. Ciccarello, Ciccarello, DelGiudice & La Fon, Charleston, West Virginia, Thomas W. Smith, Charleston, West Virginia, Attorneys for the Appellee.

DAVIS, Justice:

The State of West Virginia appeals an order of the Circuit Court of Kanawha County dismissing an indictment against Fred Salem Zain. The circuit court expressed two grounds for dismissing the indictment: (1) the court concluded that the meaning of the terms "person" and "another," as used to identify victims of the crime of obtaining money and other items of value by false pretenses pursuant to W. Va.Code §§ 61–3–24(a) and (b), did not include the State of West Virginia or its political subdivisions; (2) the court concluded that the indictment was vague and therefore insufficient. We find that the State and its political subdivisions are within the meaning of the terms "person" and "another" as contemplated by W. Va. Code §§ 61–3–24(a) and (b), and that any vagueness in the indictment may be cured through the filing of a bill of particulars.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On March 11, 1998, a Kanawha County Grand Jury returned a five count indictment against Fred Salem Zain (hereinafter "Zain"), the appellee, a former serologist for the West Virginia Department of Public Safety Crime Laboratory. All five counts of the indictment alleged that Zain obtained money under false pretenses in violation of W. Va.Code §§ 61–3–24(a) and (b).[1] Counts I and II involve Zain's employment with the West Virginia Department of Public Safety, and charge:

### COUNT I

From in or about Spring of 1986 to on or about the 26th day of June, 1989, and prior to the date of the finding of this said indictment, in the County of Kanawha, State of West Virginia, FRED SALEM ZAIN, being then and there a member of the West Virginia Department of Public Safety (West Virginia State Police), and having given his oath to truly and faithfully uphold the Constitution and the laws of the State of West Virginia as a State Police Officer and as an employee of the West Virginia State Police Criminal Identification Bureau, Serology Section, did knowingly, unlawfully and feloniously, by false pretense, token and representation that he was truly and accurately performing the duties to which he was assigned, and with intent to defraud the State of West Virginia, obtain from the State of West Virginia

---

**1.** Two separate versions of W. Va.Code § 61–3–24 were in effect during the time frame covered by the indictment against Zain, W. Va.Code § 61–3–24 (1981) (Repl.Vol.1984) and W. Va. Code § 61–3–24 (1988) (Repl.Vol.1989). Differences between the portions of the two statutes that are relevant to this appeal are primarily stylistic.

the receipt of money, property and goods, to-wit: salary and benefits as an employee of the State of West Virginia; all in violation of Chapter 61, Article 3, Section 24(a), West Virginia Code, 1931, as amended, and against the peace and dignity of the State.

## COUNT II

From in or about Spring of 1986 to on or about the 26th day of June, 1989, and prior to the date of the finding of this said indictment, in the County of Kanawha, State of West Virginia, FRED SALEM ZAIN, being then and there a member of the West Virginia Department of Public Safety (West Virginia State Police), and having given his oath to truly and faithfully uphold the Constitution and the laws of the State of West Virginia as a State Police Officer and as an employee of the West Virginia State Police Criminal Identification Bureau, Serology Section, did knowingly, unlawfully and feloniously, by false pretense, token and representation that he was truly and accurately performing the duties to which he was assigned, and with intent to defraud the State of West Virginia, obtain from the State of West Virginia a thing of value, to-wit: promotions and increases in his salary and benefits as an employee of the State of West Virginia; all in violation of Chapter 61, Article 3, Section 24(b), West Virginia Code, 1931, as amended, and against the peace and dignity of the State.

Count's III, IV and V involve trial testimony Zain gave as an expert witness at a time when he was no longer an employee of the West Virginia Department of Public Safety. These three counts charge:

## COUNT III

On or about the 24th day of July, 1989, and prior to the date of the finding of this said indictment, in the County of Kanawha, State of West Virginia, FRED SALEM ZAIN did knowingly, unlawfully and feloniously, by false pretense, token and representation, and with the intent to defraud the County Commission of Kanawha County, obtain receipt of money, to-wit: the sum of $500.00 from the County Commission of Kanawha County, in that he was paid an expert witness fee to testify truth-fully in the trial of *State of West Virginia v. James E. Richardson,* Criminal No. 89-F-5, when, in truth and fact, he gave testimony which he then and there knew to be false, all in violation of Chapter 61, Article 3, Section 24(a), West Virginia Code, 1931, as amended, and against the peace and dignity of the State.

## COUNT IV

On or about the 20th day of November, 1989, and prior to the date of the finding of this said indictment, in the County of Kanawha, State of West Virginia, FRED SALEM ZAIN did knowingly, unlawfully and feloniously, by false pretense, token and representation, and with the intent to defraud the County Commission of Kanawha County, obtain receipt of money, to-wit: the sum of $500.00 from the County Commission of Kanawha County, in that he was paid an expert witness fee to testify truthfully in the trial of *State of West Virginia v. John Earl McLaurin,* Criminal No. 89-F-60, when, in truth and fact, he gave testimony which he then and there knew to be false; all in violation of Chapter 61, Article 3, Section 24(a), West Virginia Code, 1931, as amended, and against the peace and dignity of the State.

## COUNT V

On or about the 22nd day of November, 1990, and prior to the date of the finding of this said indictment, in the County of Kanawha, State of West Virginia, FRED SALEM ZAIN did knowingly, unlawfully and feloniously, by false pretense, token and representation, and with the intent to defraud the County Commission of Kanawha County, obtain receipt of money, to-wit: the sum of $500.00 from the County Commission of Kanawha County, in that he was paid an expert witness fee to testify truthfully in the trial of *State of West Virginia v. Jimmy C. Gardner,* Criminal No. 89-F-153, when, in truth and fact, he gave testimony which he then and there knew to be false; all in violation of Chapter 61, Article 3, Section 24(a), West Virginia Code, 1931, as amended, and against the peace and dignity of the State.

Zain filed a motion to dismiss the indictment. After a hearing on the motion, the

circuit court dismissed the indictment by order entered December 14, 1998. It is from this order that the State now appeals.

## II.

### STANDARD OF REVIEW

■ The State's right to appeal a circuit court's dismissal of an indictment is limited. Pursuant to W. Va.Code § 58–5–30 (1998) (Supp.1999), "[w]henever in any criminal case an indictment is held bad or insufficient by the judgment of a circuit court, the state, on the application of the attorney general or the prosecuting attorney, may appeal such judgment to the supreme court of appeals." While this Court has previously defined the criteria for concluding that an indictment is bad or insufficient under W. Va.Code § 58–5–30, see Syl. pt. 1, *State v. Macri,* 199 W.Va. 696, 487 S.E.2d 891 (1996), that statute was amended subsequent to our decision in *Macri.* The effect of the amendment was to modernize the statute. There is nothing in the amended version of W. Va.Code § 58–5–30 that necessitates a change in our prior holding. However, since the *Macri* holding references an outdated version of W. Va. Code § 58–5–30, we herein update our decision in *Macri* to reflect the newer version of the statute by holding that an indictment is considered bad or insufficient pursuant to West Virginia Code § 58–5–30 (1998) (Supp. 1999) when within the four corners of the indictment it: (1) fails to contain the elements of the offense to be charged and sufficiently apprise the defendant of what he or she must be prepared to meet; and (2) fails to contain sufficient accurate information to permit a plea of former acquittal or conviction.

■ In the case *sub judice,* the circuit court found that the indictment failed to provide certain details necessary to the charge and that Zain's alleged conduct was not a crime pursuant to the statute relied upon by the state. Because these findings meet the criteria for concluding that an indictment is bad or insufficient, the State is permitted to appeal the circuit court's order dismissing the indictment. With regard to our review of such an appeal, we have held that " '[g]ener-

ally, the sufficiency of an indictment is reviewed *de novo.*' " Syl. pt. 7, in part, *State v. Bull,* 204 W.Va. 255, 512 S.E.2d 177 (1998) (citation omitted).

■ In connection with this appeal, we are further asked to interpret W. Va.Code § 61–3–24. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). With due regard for these appellate standards, we proceed to address the substantive issues raised by the State.

## III.

### DISCUSSION

#### A. Meaning of "Another" as used in W.Va.Code § 61-3-24

■ In its order dismissing the indictment against Zain, the circuit court reasoned that the reference to "another" in W. Va.Code §§ 61–3–24(a) and (b) "can only be read to reasonably mean another *person.*" The circuit court further noted this Court's prior holding that "the word 'person' in a statute or ordinance, in the absence of an express provision contrariwise, does not include a State agency or a public corporation." Syl. pt. 4, in part, *Charleston v. Southeastern Constr. Co.,* 134 W.Va. 666, 64 S.E.2d, 676 (1950). Therefore, the circuit court found that "neither the State (the West Virginia Department of Public Safety) nor the Kanawha County Commission are persons within the ambit of W. Va.Code, § 61–3–24 and that the indictment charges offenses against entities not contemplated by that statute."

Thus, the general issue to be resolved is whether the State of West Virginia and the Kanawha County Commission are persons within the meaning of the relevant versions of W. Va.Code § 61–3–24(a) and (b) such that they may be victims of the crime therein identified. Although two separate versions

of W. Va.Code § 61–3–24 are applicable to Zain's alleged conduct, the language which must be interpreted to resolve this issue is the same in both versions.[2]

2.  The relevant portions of W. Va.Code § 61–3–24 (1981) (Repl.Vol.1984) state:

(a) If any person obtain from another, by any false pretense, token or representation, with intent to defraud, money, goods or other property which may be the subject of larceny, or, if he obtain from another any money, goods or other property, which may be the subject of larceny, on credit, by representing that there is money due him, or to become due him, and shall assign his claim for such money, in writing, to the person from whom he shall obtain such money, goods or other property, and shall afterwards collect the same without the consent of such assignee, with intent to defraud, he shall, in either case, be deemed guilty of larceny, and, if the value of the money, goods or other property is two hundred dollars or more, such person shall be guilty of a felony, and, upon conviction thereof, shall be confined in a penitentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in the county jail not more than one year and shall be fined not more than five hundred dollars. If the value of the money, goods or other property is less than two hundred dollars, such person shall be guilty of a misdemeanor, and, upon conviction thereof, shall be confined in the county jail for a term not to exceed one year or fined not to exceed five hundred dollars, or both, in the discretion of the court. If any person obtain by any false pretense, token or representation, with intent to defraud, the signature of any other person to a writing, the false making whereof would be forgery, such person shall be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary not less than one nor more than five years, or in the discretion of the court, be confined in jail not more than one year and be fined not exceeding five hundred dollars. And any person who shall remove any of his property out of any county with intent to prevent the same from being levied upon by any execution, or who shall secrete, assign or convey, or otherwise dispose of any of his property with intent to defraud any creditor or prevent such property being made liable for payment of his debts, and any person who shall receive such property, with such intent, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than twenty-five nor more than one thousand dollars and be imprisoned in the county jail not exceeding one year. And when the property so removed, secreted, concealed, assigned, conveyed, received or otherwise disposed of, shall be worth fifty dollars or less, such offense shall be tried by a magistrate in the mode prescribed for the trial of other criminal offenses by a magistrate: Provided, that upon conviction for such offense before a magistrate the person so convicted shall be fined not exceeding fifty dollars and confined in the county jail not exceeding thirty days. But nothing in this section contained shall prevent any creditor from proceeding against any such fraudulent debtor as provided in article five [§ 38–5–1 et seq.], chapter thirty-eight, and in article seven [§ 53–7–1 et seq.], chapter fifty-three of this Code, or of any other remedy in equity or at law now existing.

(b) If any person, firm or corporation obtain labor, services or any other such thing of value from another, by any false pretense, token or representation, with intent to defraud, such person, firm or corporation, if the value of the labor, services or any other such thing of value is two hundred dollars or more, shall be guilty of a felony, and, upon conviction thereof, shall be confined in a penitentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in the county jail not more than one year and shall be fined not more than five hundred dollars. If the value of the labor, services or any other such thing of value is less than two hundred dollars, such person, firm or corporation shall be guilty of a misdemeanor, and, upon conviction thereof, shall be confined in the county jail for a term not to exceed one year or fined not to exceed five hundred dollars, or both, in the discretion of the court.

The relevant portions of W. Va.Code § 61–3–24 (1988) (Repl.Vol.1989) state:

(a) If any person obtain from another by any false pretense, token or representation, with intent to defraud, money, goods or other property which may be the subject of larceny, or if he obtain from another any money, goods or other property, which may be the subject of larceny, on credit, by representing that there is money due him or to become due him, and shall assign his claim for such money in writing to the person from whom he shall obtain such money, goods or other property, and shall afterwards collect the same without the consent of such assignee, with intent to defraud, in either case, be guilty of larceny and, if the value of the money, goods or other property is two hundred dollars or more, such person is guilty of a felony, and, upon conviction thereof, shall be confined in a penitentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in the county jail not more than one year and be fined not more than five hundred dollars. If the value of the money, goods or other property is less than two hundred dollars, such person is guilty of a misdemeanor, and, upon conviction thereof, shall be confined in the county jail not more than one year or fined not more than five hundred dollars, or both, in the discretion of the court. If any person obtain by any false pretense, token or representation, with intent to defraud, the signature of any other person to a writing, the false making whereof would be forgery, such person is guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary not less than one nor more than five years, or, in the discretion of the

Both of the relevant versions of W. Va.Code § 61-3-24(a) begin with the phrase "[i]f any person obtain from *another*, by any false pretense, token or representation." (Emphasis added). Similarly, subsection (b) of the pertinent versions of W. Va.Code § 61-3-24 begins with "[i]f any person, firm or corporation obtain labor, services or any other such thing of value from *another* by any false pretense, token or representation." (Emphasis added). Other references to the victim of the crimes proscribed by W. Va. Code §§ 61-3-24(a) and (b) likewise utilize the terms "another" or "person." We agree with the lower court that the term "another" clearly refers to another "person." Thus, the question is whether the scope of that term, as it is used in W. Va.Code §§ 61-3-24(a) and (b), includes the State of West Virginia and a County Commission. We find that it does.

W.Va.Code §§ 61-3-24(a) and (b) specifically, and Article 3 of Chapter 61 of the West Virginia Code generally, are silent as to the scope of the term "person" as it is used in W. Va.Code §§ 61-3-24(a) and (b).[3] We have previously held that "[i]n construing an ambiguous criminal statute, the rule of lenity applies which requires that penal statutes must be strictly construed against the State and in favor of the defendant." Syl. pt. 5, *State ex rel. Morgan v. Trent*, 195 W.Va. 257, 465 S.E.2d 257 (1995). In this regard, we have explained that "[t]he rationale for the rule of lenity is to preclude 'expansive judicial interpretations [that] may create penalties for offenses that were not intended by the legislature.'" *Id.* at 262, 465 S.E.2d at 262 (quoting *State v. Brumfield*, 178 W.Va. 240, 246, 358 S.E.2d 801, 807 (1987) (second alteration in original) (additional citations omitted)).

However, we have also expressed our belief that the rule of lenity cannot "be extended to mean that a statute can be con-

court, be confined in the county jail not more than one year and fined not more than five hundred dollars. And any person who removes any of his property out of any county with intent to prevent the same from being levied upon by any execution, or who secretes, assigns or conveys, or otherwise disposes of any of his property with intent to defraud any creditor or prevent such property being made liable for payment of his debts, and any person who receives such property with such intent, is guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than twenty-five nor more than one thousand dollars and be confined in the county jail not more than one year. And when the property so removed, secreted, concealed, assigned, conveyed, received or otherwise disposed of, is worth fifty dollars or less, such offense shall be tried by a magistrate in the mode prescribed for the trial of other criminal offenses by a magistrate: Provided, That upon conviction for such offense before a magistrate the person so convicted shall be fined not more than fifty dollars and confined in the county jail not more than thirty days. But nothing in this section contained shall prevent any creditor from proceeding against any such fraudulent debtor as provided in article five [§ 38-5-1 et seq.], chapter thirty-eight, and in article seven [§ 53-7-1 et seq.], chapter fifty-three of this code, or of any other remedy in equity or at law now existing.

(b) If any person, firm or corporation obtain labor, services or any other such thing of value from another by any false pretense, token or representation, with intent to defraud, that person, firm or corporation is guilty of theft of services and if the value of the labor, services or any other such thing of value is two hundred dollars or more, is guilty of a felony, and, upon conviction thereof, shall be confined in a penitentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in the county jail not more than one year and be fined not more than five hundred dollars. If the value of the labor, services or any other such thing of value is less than two hundred dollars, that person, firm or corporation is guilty of a misdemeanor, and, upon conviction thereof, shall be confined in the county jail not more than one year or fined not more than five hundred dollars, or both, in the discretion of the court.

W.Va.Code § 61-3-24 has also been amended subsequent to the period covered in the indictment against Zain. *See* W. Va.Code § 61-3-24 (1994) (Repl.Vol.1997).

3. W. Va.Code § 2-2-10 (1998) (Repl.Vol.1999) provides rules to be "observed in the construction of statutes, unless a different intent on the part of the Legislature be apparent from the context." Pursuant to subsection (i) of W. Va. Code § 2-2-10, "[t]he word 'person' or 'whoever' shall include corporations, societies, associations and partnerships, if not restricted by the context." Although this section of the code does not include the State within the definition of "person," it uses the term "include," which is a term of enlargement rather than a term of limitation. Thus, omission of the State from this definition of "person" does not preclude its inclusion under the proper circumstances.

strued so literally that an absurd result will occur that defies common sense." *Id.* at 263, 465 S.E.2d at 263. We find that excluding the State of West Virginia and its political subdivisions from the meaning of W. Va.Code §§ 61-3-24(a) and (b) defies common sense. In reaching this conclusion, we first consider the legislative intent behind the enactment of this statute, as we must when undertaking to construe any statute.

> " ' " ' "The primary object in construing a statute is to ascertain and give effect to the intent of the legislature." Syl. Pt. 1, *Smith v. State Workmen's Compensation Com'r.*, 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syl. Pt. 2, *State ex rel. Fetters v. Hott*, 173 W.Va. 502, 318 S.E.2d 446 (1984)." Syllabus point 2, *Lee v. West Virginia Teachers Retirement Board*, 186 W.Va. 441, 413 S.E.2d 96 (1991).' Syl. pt. 2, *Francis O. Day Co., Inc. v. Director, Division of Environmental Protection*, 191 W.Va. 134, 443 S.E.2d 602 (1994)." Syllabus point 4, *Hosaflook v. Consolidation Coal Co.*, 201 W.Va. 325, 497 S.E.2d 174 (1997).

Syl. pt. 3, *West Virginia Dep't of Military Affairs and Pub. Safety, Div. of Juvenile Servs. v. Berger*, 203 W.Va. 468, 508 S.E.2d 628 (1998).

■ We have further explained that

> In ascertaining the intent of the Legislature, we must not base our determination on a single term or a few select words. Rather, we must give effect to the entire statute. *Ewing v. Board of Educ. of County of Summers*, 202 W.Va. 228, 241, 503 S.E.2d 541, 554 (1998) (" ' " 'In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation.' Syl. Pt. 2, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. pt. 3, *State ex rel. Fetters v. Hott*, 173 W.Va. 502, 318 S.E.2d 446 (1984).' Syl. pt. 4, *State ex rel. Hechler v. Christian Action Network*, 201 W.Va. 71, 491 S.E.2d 618 (1997).").

*Jan-Care v. Public Service Commission*, 206 W.Va. 183, 191, 522 S.E.2d 912, 920 (1999). The obvious purpose of W. Va.Code §§ 61-3-24(a) and (b) is to discourage the act of obtaining money, goods, labor, services and other things of value by false pretenses. It makes no sense to prohibit such conduct when it is used to obtain something of value from a natural person, yet freely permit such conduct when the victim is an entity other than a natural person.

Furthermore, there is no statute in the West Virginia Code generally criminalizing fraud against the State. Thus, excluding the State from W. Va.Code §§ 61-3-24(a) and (b) would mean that anyone could defraud the State or its political subdivisions and the State would be powerless to prosecute the conduct (unless, of course, there exists a specific statute prohibiting the particular method of fraud perpetrated). We do not believe that the Legislature intended to place the State in such a vulnerable position.

■ Moreover, the term "person" is commonly understood to have a broader meaning than simply a human being. Indeed, a common dictionary definition of the term "person" includes "a body of persons, or a corporation, partnership, or other legal entity that is recognized by law as the subject of rights and duties." *Webster's Third New International Dictionary of the English Language Unabridged* 1686 (1970). *See also Random House Dictionary of the English Language* 1445 (2d ed., unabridged, 1987) ("*Law.* a human being (natural person) or a group of human beings, a corporation, a partnership, an estate, or other legal entity (artificial person or juristic person) recognized by law as having rights and duties."). Consequently, our construction of · this statute comports with the principle that:

> "Generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use." Syl. pt. 4, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars of the United States, a Corporation*, 144 W.Va. 137, 107 S.E.2d 353 (1959).

Syl. pt. 5, *State ex rel. Goff v. Merrifield*, 191 W.Va. 473, 446 S.E.2d 695 (1994).

Additionally, we note that there are numerous statutes that treat the State as a

person, further indicating such use is "general and proper."[4] *See, e.g.,* W. Va.Code § 5D–1–3(12) (1988) (Repl.Vol.1993) (" 'Person' means any *public* or private corporation, institution, association, firm or company organized or existing under the laws of this or any other state or country; the United States or *the state of West Virginia;* any federal or *state governmental agency; political subdivision; county commission; municipality;* ... or any other legal entity whatever." (emphasis added)); W. Va.Code § 6B–3–1(8) (1995) (Supp.1999) (" 'Person' means ... *any department, commission, board, publicly supported college or university, division, institution, bureau, or any other instrumentality of the state; or any county, municipal corporation, school district or any other political subdivision of the state.*" (emphasis added)); W. Va.Code § 11–6E–2(10) (1996) (Repl.Vol.1999) (" 'Person' means and includes *any state, or its political subdivisions or an agency of the state of West Virginia or its political subdivisions,* ..." (emphasis added)); W. Va.Code § 16–2D–2(w) (1999) (Supp.1999) (" 'Person' means an individual, trust, estate, partnership, committee, corporation, association and other organizations such as joint-stock companies and insurance companies, *a state or a political subdivision or instrumentality thereof* or any legal entity recognized by the state." (emphasis added)); W. Va.Code § 16–19–1(h) (1980) (Repl.Vol.1998) (" 'Person' means an individual, corporation, *government or governmental subdivision or agency,* business trust, estate trust, partnership or association, or any other legal entity." (emphasis added)); W. Va.Code § 16–29B–3(f) (1997) (Repl.Vol. 1998) (" 'Person' means an individual, trust, estate, partnership, committee, corporation, association or other organization such as a joint stock company, *a state or political sub-*

*division or instrumentality thereof* or any legal entity recognized by the state." (emphasis added)); W. Va.Code § 16–30B–3(p) (1997) (Repl.Vol.1998) (" 'Person' means an individual, a corporation, a business trust, a trust, a partnership, an association, *a government, a governmental subdivision or agency* or any other legal entity." (emphasis added)); W. Va.Code § 16–35–3(x) (1998) (Supp.1999) (" 'Person' means any individual, partnership, firm, society, association, trust, corporation, other business entity or *any agency, unit, or instrumentality of federal, state or local government.*" (emphasis added)); W. Va.Code § 19–12–2(n) (1996) (Repl.Vol.1997) (" 'Person' means any individual or combination of individuals, partnership, corporation, company, society, association, *governmental organization* or other business entity and each officer, agent or employee thereof." (emphasis added)); W. Va.Code § 19–12D–3(g) (1976) (Repl.Vol.1997) (" 'Person' means any individual or combination of individuals, partnership, corporation, company, society, association, firm, or other business entity and each officer, agent or employee thereof; *the state and federal government and any department, agency, or subdivision thereof;* or any other entity." (emphasis added)); W. Va.Code § 22–3–3(s) (1997) (Repl.Vol.1998) (" 'Person' means any individual, partnership, firm, society, association, trust, corporation, other business entity or *any agency, unit or instrumentality of federal, state or local government.*" (emphasis added)); W. Va.Code § 22–5–2(5) (1994) (Repl.Vol.1998) (" 'Person' means any and all persons, natural or artificial, *including the state of West Virginia or any other state,* the United States of America, *any municipal, statutory, public* or private corporation organized or existing under the laws of this or any other state or country, and any firm, partnership or association

---

**4.** For decisions of other courts concluding that the state is included within the meaning of the term "person," see *Zorba Contractors, Inc. v. Housing Auth. of Newark,* 282 N.J.Super. 430, 660 A.2d 550 (1995) (finding Housing Authority was "person," and therefore a victim, for purposes of consumer fraud act); *Hamilton County Bd. of Mental Retardation and Developmental Disabilities v. Professionals Guild of Ohio,* 46 Ohio St.3d 147, 545 N.E.2d 1260 (1989) (determining that county board was "person" entitled to appeal an order of the State Employment

Relations Board); *State v. Spino,* 143 Or.App. 619, 925 P.2d 101 (1996) (holding that trial court did not err in ordering criminal defendant to make restitution to state criminal injuries compensation account, which was a "person" pursuant to restitution statute); *State ex rel. Juvenile Dep't v. Gates,* 96 Or.App. 365, 774 P.2d 484 (1989) (concluding that state may appeal order of juvenile court pursuant to statute utilizing term "person" in identifying those who may pursue such an appeal).

of whatever nature." (emphasis added)); W. Va.Code § 22–6–1(n) (1994) (Repl.Vol.1998) ("'Person' means any natural person, corporation, firm, partnership, partnership association, venture, receiver, trustee, executor, administrator, guardian, fiduciary or other representative of any kind, *and includes any government or any political subdivision or any agency thereof.*" (emphasis added)); W. Va.Code § 22–7–2(4) (1994) (Repl.Vol.1998) ("'Person' means any natural person, corporation, firm, partnership, partnership association, venture, receiver, trustee, executor, administrator, guardian, fiduciary or other representative of any kind, and *includes any government or any political subdivision or agency thereof.*" (emphasis added)); W. Va. Code § 22–12–3(h) (1994) (Repl.Vol.1998) ("'Person' means … *state of West Virginia; governmental agency,* including federal facilities; *political subdivision; county commission; municipal corporation;* …." (emphasis added)); W. Va.Code § 22–14–3(i) (1994) (Repl.Vol.1998) ("'Person' means … *the state of West Virginia; any state governmental agency; any political subdivision of the state or of its counties or municipalities;* …." (emphasis added)); W. Va.Code § 22–17–3(f) (1999) (Supp.1999) ("'Person' means any individual, trust, firm, joint stock company, corporation (including government corporations), partnership, association, *state, municipality, commission, political subdivision of a state,* interstate body, consortium, joint venture, commercial entity and the United States government." (emphasis added)); W. Va.Code § 22–18–3(11) (1994) (Repl.Vol.1998) ("'Person' means any individual, trust, firm, joint stock company, public, private or government corporation, partnership, association, *state or federal agency,* the United States government, *this state or any* other state, *municipality, county commission or any other political subdivision of a state* or any interstate body." (emphasis added)); W. Va.Code § 22–22–2(t) (1996) (Repl.Vol.1998) ("'Person' means any … *state of West Virginia; governmental agency,* including federal facilities; *political subdivision; county commission;* municipal corporation; partnership; trust; estate; person or individuals acting individually or as a group; or any legal entity whatever." (emphasis added));

W. Va.Code § 22–22A–2(f) (1996) (Repl.Vol. 1998) ("'Person' means an individual, corporation, partnership, association, *state, municipality, commission or political subdivision of a state* or any interstate body." (emphasis added)); W. Va.Code § 22C–1–3(12) (1994) (Repl.Vol.1998) ("'Person' means … *the state of West Virginia;* any federal or *state governmental agency; political subdivision; county commission; municipality;* …." (emphasis added)); W. Va.Code § 22C–3–3(8) (1994) (Repl.Vol.1998) ("'Person' means … *the state of West Virginia; governmental agency; political subdivision; county commission; municipality;* …." (emphasis added)); W. Va.Code § 22C–4–2(h) (1998) (Repl.Vol.1998) ("'Person' means … *the state of West Virginia; governmental agency,* including federal facilities; *political subdivision; county commission;* municipal corporation; …." (emphasis added)); W. Va.Code § 22C–8–2(17) (1994) (Repl.Vol. 1998) ("'Person' means any natural person, corporation, firm, partnership, partnership association, venture, receiver, trustee, executor, administrator, guardian, fiduciary or other representative of any kind, and *includes any government or any political subdivision or any agency thereof.*" (emphasis added)); W. Va.Code § 22C–9–2(3) (1998) (Repl.Vol. 1998) ("'Person' means any natural person, corporation, partnership, receiver, trustee, executor, administrator, guardian, fiduciary or other representative of any kind, and *includes any government or any political subdivision or any agency thereof.*" (emphasis added)); W. Va.Code § 24B–1–2(1) (1984) (Repl.Vol.1999) ("'Person' means any individual, firm, joint venture, partnership, corporation, association, *state, municipality,* cooperative association or joint-stock association, and includes any trustee, receiver, assignee or personal representative thereof." (emphasis added)); W. Va.Code § 24C–1–2(j) (1996) (Repl.Vol.1999) ("'Person' means any individual, firm, joint venture, partnership, corporation, association, *state agency, county, municipality,* cooperative association or joint stock association, and any trustee, receiver, assignee, agency or personal representative thereof." (emphasis added)); W. Va.Code § 24D–1–2 (15) (1999) (Supp.1999) ("'Person' means an individual, partnership, association,

joint stock company, trust, corporation or *governmental agency.*" (emphasis added)); W. Va.Code § 24D–2–2(h) (1999) (Repl.Vol. 1999) ("'Person' means an individual, partnership, associate, joint stock company, trust, corporation or *governmental agency.*" (emphasis added)); W. Va.Code § 29–2A–1(*l*) (1995) (Repl.Vol.1999) ("'Person' means any individual, firm, copartnership, corporation, company, association, joint stock association or *body politic* and includes any trustee, receiver, assignee or other similar representative thereof." (emphasis added)); W. Va. Code § 31B–1–101(14) (1996) (Repl.Vol.1996) ("'Person' means an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, *government, governmental subdivision, agency, or instrumentality* or any other legal or commercial entity." (emphasis added)); W. Va.Code § 32–4–401(k) (1997) (Supp.1999) ("'Person' means an individual, a corporation, a partnership, an association, a joint-stock company, a trust where the interests of the beneficiaries are evidenced by a security, an unincorporated organization, *a government or a political subdivision of a government.*" (emphasis added)); W. Va.Code § 36–8–1(12) (1997) (Repl.Vol.1997) ("'Person' means an individual, business association, financial organization, estate, trust, government, governmental subdivision, agency or instrumentality, or any other legal or commercial entity." (emphasis added)); W. Va. Code § 36–11–1(3) (1995) (Repl.Vol.1997) ("'Person' means an individual, corporation, business trust, estate, trust, partnership, association, joint venture, *government, governmental subdivision, agency or instrumentality* or any other legal or commercial entity." (emphasis added)); W. Va.Code § 36B–1–103(22) (1998) (Supp.1999) ("'Person' means an individual, corporation, business trust, estate, trust, partnership, association, joint venture, *government, governmental subdivision or agency,* or other legal or commercial entity." (emphasis added)); W. Va.Code § 40–1A–1(i) (1986) (Repl.Vol.1997) ("'Person' means an individual, partnership, corporation, association, organization, *government or governmental subdivision or agency,* business trust, estate, trust or any other legal or commercial entity." (emphasis added)); W.

Va.Code § 44A–1–4(7) (1998) (Supp.1999) ("'Person' means, generally, a natural person, any corporation, association, partnership or other business entity, *any political subdivision or other public agency,* or any estate, trust or other collection of properties to which the law attributes the capacity of having rights or duties." (emphasis added)); W. Va.Code § 47–1–1(j) (1994) (Repl.Vol.1999) ("'Person' means both plural and the singular, as the case demands, and includes individuals, partnerships, corporations, companies, societies, associations and *government entities.*" (emphasis added)); W. Va.Code § 47–22–1(c) (1986) (Repl.Vol.1999) ("'Person' means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, *government, governmental subdivision or agency* or any other legal or commercial entity." (emphasis added)); W. Va.Code § 47B–1–1(9) (1996) (Repl. Vol.1999) ("'Person' means an individual, corporation, business trust, estate, trust, partnership, association, joint venture, *government, governmental subdivision, agency or instrumentality,* or any other legal or commercial entity." (emphasis added)); W. Va.Code § 55–7D–2(j) (1998) (Supp.1999) ("'Person' means an individual, corporation, partnership, organization, association or *governmental entity,* . . . ." (emphasis added)); W. Va.Code § 60A–1–101(s) (1983) (Repl.Vol. 1997) ("'Person' means individual, corporation, *government or governmental subdivision or agency,* business trust, estate, trust, partnership or association, or any other legal entity." (emphasis added)); W. Va.Code § 61–3C–3(m) (1989) (Repl.Vol.1997) ("'Person' means any natural person, general partnership, limited partnership, trust, association, corporation, joint venture, or *any state, county or municipal government and any subdivision, branch, department or agency thereof.*" (emphasis added)).

Lastly, we find that the lower court's reliance on *Charleston v. Southeastern Constr. Co.,* 134 W.Va. 666, 64 S.E.2d 676 (1950) is misplaced. In that case, this Court concluded that the State was not subject to the zoning laws of the City of Charleston with regard to a public building "constructed by The State Office Building Commission . . . on property purchased under the general appro-

priation Act." Syl. pt. 2, *Southeastern Constr. Co.* Because the statute in question in *Southeastern* involved a city's power to enforce its laws against the State (the sovereign),[5] rather than the State's ability to prosecute for a crime committed against it, we find *Southeastern* to be distinguishable and not persuasive in deciding the issue before us.

For the foregoing reasons, we hold that the State of West Virginia and its political subdivisions are within the meaning of the terms "person" and "another" as those terms are used in W. Va.Code §§ 61–3–24(a) and (b) (1981) (Repl.Vol.1984), W. Va.Code §§ 61–3–24(a) and (b) (1988) (Repl.Vol.1989) and W. Va.Code §§ 61–3–24(a) and (d) (1994) (Repl.Vol.1997).[6] Based upon this holding, we conclude that the circuit court erred in ruling that the State was not embraced within the meaning of "another" as intended by W. Va.Code §§ 61–3–24(a) and (b), and in dismissing the indictment against Zain for that reason.

### B. Sufficiency of the Indictment

Although the circuit court concluded that the indictment must be dismissed based upon it's erroneous conclusion that the State is not a person for the purposes of W. Va.Code § 61–3–24, the court nevertheless addressed a second challenge to the indictment raised by Zain. The second challenge to the indictment was that counts I and II do not constitute a crime. In this regard, the court observed:

It is not apparent [from] the language of counts I and II, whether the State contends that all or only part of the compensation paid to the defendant related to his employment at the West Virginia State Police Crime Lab [was] paid as a result of false testimony or other fraudulent conduct. Similarly, it is unspecified whether the defendant earned any pa[r]t of his pay, increases in pay or promotions for activities that were forthright and honest. Coincidentally, neither count states with particularity the value of the compensation or benefits fraudulently obtained by the defendant. In fact, it is probably inherent in the present use of the statute that there is significant indefiniteness in the charge and the proof of the offense when an employee has worked for a lengthy period and the job responsibilities are extensive and varied.

Relying on a decision of the United States Supreme Court in *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), the circuit court further reasoned that:

If the charge leveled by the State constitutes obtaining money or property by false pretenses, it would be a crime to accept a pay check if the employee napped briefly at his desk occasionally, or made a false statement to a superior about work that he had done or obtained employment by use of a false resume, notwithstanding the quality of his work after he was employed. As the Court noted in *McNally,* the boundaries of the application of a criminal statute must be clear and unambiguous so that the standards of conduct of an employee are well understood.

From these comments, it is apparent that the circuit court concluded that there are two additional flaws with the indictment. First, that it is insufficient as it does not provide certain details, and second, that Zain's al-

---

**5.** In dicta, the *Southeastern* Court noted:

If we should hold that the zoning ordinance should apply, we would thereby give to the Council of the City of Charleston and to future councils thereof unbridled power to enact ordinances as to building zones, such as they might deem proper. Such delegation would make the Legislature subservient to every future action of the Council of the City of Charleston, and thus reside in the authorities of that city future indefinite powers without any standards whatsoever to guide or control them, in which event the Council of the City of Charleston could act arbitrarily and capriciously.

*Charleston v. Southeastern Constr. Co.,* 134 W.Va. 666, 677, 64 S.E.2d, 676, 682 (1950).

**6.** While the current version of this statute, W. Va.Code § 61–3–24 (1994) (Repl.Vol.1997), is not technically at issue in this appeal, we note that subsections (a) and (d) of that version contain the current description of the crimes for which Zain has been charged and use identical references to the terms "person" and "another" in identifying the victim of the offenses described in those portions of the statute. Therefore, our holding applies with equal force to W. Va.Code §§ 61–3–24(a) and (d) (1994) (Repl.Vol.1997).

leged conduct is not a crime pursuant to W. Va.Code § 61–3–24.

■ We first address the issue of whether the indictment against Zain is insufficient because it does not set forth the amounts of Zain's salary or the value of his benefits, which are the subject of the charges against him. With regard to the sufficiency of an indictment, we have held that:

"An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based." Syllabus Point 3, *State v. Hall,* 172 W.Va. 138, 304 S.E.2d 43 (1983).

Syl. pt. 8, *State v. Bull,* 204 W.Va. 255, 512 S.E.2d 177 (1998).

Here, the language of counts I and II of the indictment substantially follow the language of W. Va.Code § 61–3–24. Counts I and II informed Zain that he was being accused of fraudulently obtaining money in the form of salaries and benefits from the State of West Virginia. Additionally, by specifically including the citation to the statute under which Zain was being charged, the indictment unquestionably enabled the lower court to determine the statute upon which counts I and II are based. Finally, while the indictment does not use the exact language contained in the model indictment form found at W. Va.Code § 62–9–12 (1931) (Repl. Vol.1997),[7] it is substantially similar to that form such that its tenor and effect are the same.

■ To the extent that Zain complains that the indictment failed to include a specific accounting of the amounts he allegedly obtained by false pretenses, the proper remedy is for Zain to file a bill of particulars pursuant to Rule 7(f) of the West Virginia Rules of Criminal Procedure.[8]

"It is fundamental that the accused must be fully and plainly informed of the character and cause of the accusation. The Constitution so requires.... A bill of particulars is for the purpose of furnishing details omitted from the accusation or indictment, to which the defendant is entitled before trial." *State v. Counts,* 90 W.Va. 338, 342, 110 S.E. 812, 814 (1922). *See State v. Koski,* 101 W.Va. 477, 133 S.E. 79 (1926). *See also* 3A M.J. *Bill of Particulars* § 3 (1976).

*State v. Meadows,* 172 W.Va. 247, 254, 304 S.E.2d 831, 838 (1983).

The circuit court also indicated that the charges against Zain in counts I and II of the indictment are ambiguous. The court expressed its concern that under the present application of W. Va.Code § 61–3–24 "it would be a crime to accept a pay check if the employee napped briefly at his desk occasionally, or made a false statement to a superior about work that he had done or obtained employment by the use of a false resume." As expressed above, we find no ambiguity with the indictment that could not be resolved through the filing of a bill of particulars. Moreover, we note that the type of factual circumstances described by the lower court are not involved in this case and are plainly distinguishable from Zain's alleged conduct, which, if true, not only cost the State the amount of the wages and benefits fraudulently acquired by Zain, but also sub-

---

7. According to W. Va.Code § 62–9–12 (1931) (Repl.Vol.1997):

An indictment for false pretenses shall be sufficient if it be in form, tenor or effect as follows (after following the form in section one [§ 62–9–1] ):

That A .........., on the .......... day of .........., nineteen .........., in the said county of .........., did unlawfully, fraudulently, designedly and feloniously falsely pretend to one B .......... that (here set out the fraudulent misrepresentations), by means of which fraudulent and false pretenses the said A .......... did then and there feloniously and

unlawfully obtain (here state the money or property obtained) of the property, goods and chattels of B .........., against the peace and dignity of the State.

8. W. Va. R. Cr. P. 7(f) states:

*Bill of Particulars.*—The court may direct the filing of a bill of particulars. A motion for a bill of particulars shall be made pursuant to the provisions of Rule 12(b)(4) or at such later time as the court may permit. A bill of particulars may be amended at any time subject to such conditions as justice requires.

jected numerous individuals to criminal convictions based upon false serology evidence. *See Matter of Investigation of West Virginia State Police Crime Lab., Serology Div.*, 190 W.Va. 321, 438 S.E.2d 501 (1993).

This case is also distinguishable from the *McNally* case relied upon by the circuit court. In *McNally v. United States*, two defendants appealed their convictions for mail fraud.[9] The convictions were based upon a "scheme (1) to defraud the citizens and government of Kentucky of their right to have the Commonwealth's affairs conducted honestly, and (2) to obtain, directly and indirectly, money and other things of value by means of false pretenses and the concealment of material facts."[10] 483 U.S. 350, 353–54, 107 S.Ct. 2875, 2878, 97 L.Ed.2d 292, 298. The *McNally* Court explained that the "prosecution's principal theory of the case ... was that petitioners' participation in a self-dealing patronage scheme defrauded the citizens and government of Kentucky of certain '*intangible rights*,' such as the right to have the Commonwealth's affairs conducted honestly." *McNally* at 352, 107 S.Ct. at 2877, 97 L.Ed.2d at 297 (emphasis added). The Court further explained that

> as the action comes to us, there was no charge and the jury was not required to find that the Commonwealth itself was defrauded of any money or property. It was not charged that in the absence of the alleged scheme the Commonwealth would

have paid a lower premium or secured better insurance. Hunt and Gray received part of the commissions but those commissions were not the Commonwealth's money. Nor was the jury charged that to convict it must find that the Commonwealth was deprived of control over how its money was spent.... Although the Government now relies in part on the assertion that petitioners obtained property by means of false representations to [a private insurance agent], ... there was nothing in the jury charge that required such a finding.

*Id.* at 360–61, 107 S.Ct. at 2882, 97 L.Ed.2d at 302–03. Having concluded that the purpose of the mail fraud statute was to protect property rights, the Court found that the "jury instruction on the substantive mail fraud count[, which allowed conviction for violating intangible rights such as the right to have government affairs conducted honestly,] permitted a conviction for conduct not within the reach of [the mail fraud statute]." *Id.* at 361, 107 S.Ct. at 2882, 97 L.Ed.2d at 303.

Although the language of the mail fraud statute at issue in *McNally* is similar to that contained in the statute at issue in the case *sub judice*, unlike the *McNally* defendants, Zain has not been charged with violating an intangible right. Rather, he has been charged with defrauding the State of money, a tangible item.[11] Consequently, we find

---

9. The federal mail fraud statute, 18 U.S.C. 1341, states in pertinent part:
   "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting so to do, [uses the mails or causes them to be used], shall be fined not more than $1,000 or imprisoned not more than five years, or both."
   *McNally v. United States*, 483 U.S. 350, 352 n. 1, 107 S.Ct. 2875, 2877 n. 1, 97 L.Ed.2d 292, 297 n. 1 (1987).

10. The scheme in which the *McNally* defendants engaged involved requiring an insurance company, which was acting as the state's agent for securing a workmen's compensation policy, to share any resulting commissions in excess of $50,000 per year with other insurance agencies specified by the then chairman of the state democratic party, who was part of the scheme with

the defendants. A portion of the excess commissions were paid to companies from which the defendant's obtained financial benefits as a result of those payments.

11. W. Va.Code § 61–3–24(a) expressly contemplates a tangibility element by requiring that the subject of the fraud be "money, goods or other property which may be the subject of larceny." Zain argues that one cannot steal his or her own salary and benefits, thus such property may not be the "subject of larceny." We disagree. Counts I and II of the indictment charge Zain with obtaining money, a tangible item, by false pretenses. In this instance, the money simply happens to be in the form of salaries and benefits. While lawfully earned salaries and benefits may not be the subject of larceny, unlawfully obtained salaries and benefits clearly may be the subject of larceny. For example, an employee who modifies a computerized payroll system to give him or herself an unauthorized raise has,

that the indictment against Zain was sufficient, and the circuit court erred in dismissing the indictment.

### IV.

### CONCLUSION

For the reasons discussed in the body of this opinion, we reverse the December 14, 1998, order of the Circuit Court of Kanawha County, and remand this case for further proceedings.

Reversed and Remanded.

Judge STONE, sitting by temporary assignment.

Justice SCOTT did not participate.

with the proper *mens rea,* unquestionably committed a larceny with regard to his or her salary.