443 S.E.2d 602

FRANCIS O. DAY CO., INC., Appellee,

v.

DIRECTOR, DIVISION OF ENVIRON-
MENTAL PROTECTION OF the WEST
VIRGINIA DEPARTMENT OF COM-
MERCE, LABOR AND ENVIRONMEN-
TAL RESOURCES, Appellee Below, Ap-
pellant,

Murall Limited Partnership, a West Virgi-
nia Limited Partnership; the Berkeley
County Public Service District, a Munic-
ipal Corporation; Elmer Vickers, Mary
Catherine Vickers, Emmett Moler, Jr.,
Florence Moler, Individuals; and Citi-
zens Against the Quarry, a Not–For–
Profit Organization, Intervenors Below,
Appellants,

Elmer Vickers, Mary Catherine Vickers,
Emmett Moler, Jr., Florence Moler, In-
dividuals; and Citizens Against the
Quarry, a Not–For–Profit Organization,
Intervenors Below,

Sandra Shade; James and Betty Hunter;
Gary and Gloria Willis, and the Board
of Trustees of the University of West
Virginia System, Intervenors Below,

Board of Trustees of the University
of West Virginia System,
Intervenor Below,

Jefferson County League of Women Vot-
ers; City of Martinsburg; Eastern Pan-
handle Regional Planning and Develop-
ment Council—Region 9; Potomac Au-
dubon Society; Bob Wise, United States
Representative, 2nd District; Sondra
Moore Lucht, Senator, 16th District;
Dale Manuel, Delegate, 40th District;
Vicki Douglas, Delegate, 37th District;
County Commission of Berkeley County,
Intervenors.

Nos. 21916, 21917.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 25, 1994.

Decided March 28, 1994.

Charles R. McElwee, Christopher B. Power, David L. Yaussy, Robinson & McElwee, Charleston, for Francis O. Day Co., appellee.

Susan R. Snowden, Paul B. Weiss, Martin & Seiberet, Martinsburg, for Murall Ltd. Partnership, et al., intervenors.

Brentz H. Thompson, Sr. Asst. Atty. Gen., Charleston, for Bd. of Trustees of the University of West Virginia System, intervenor.

William E. Adams, Jr., Deputy Atty. Gen., Shirley A. Skaggs, Sr. Asst. Atty. Gen.,

Charleston, for Director, Div. of Environmental Protection, appellant.

James Randall Rhodes, Braun Hamstead, Hamstead & Associates, Charles Town, for Sandra Shade, et al., intervenors.

David A Camilletti, Shepherdstown, for the Jefferson County League of Women Voters, et al., intervenors.

BROTHERTON, Chief Justice:

The appellant, the Division of Environmental Protection of the West Virginia Department of Commerce, Labor and Environmental Resources (hereinafter referred to as "DEP") appeals from an August 4, 1993, ruling of the Circuit Court of Kanawha County which reversed the DEP Director's decision to deny a surface mining permit to the appellee, Francis O. Day Co., Inc. (hereinafter referred to as "Day").

In January, 1989, Day applied for a mining permit to operate a limestone quarry on land located in Berkeley and Jefferson Counties, West Virginia. The proposed location of the 300–acre quarry is adjacent to the proposed IRS computer facility and the new United States Coast Guard facility. The West Virginia University Experimental Farm, the Veteran's Hospital, and a working dairy farm are also located in the area. Quite a controversy was sparked over the proposed quarry, and local land owners and business owners became intervenors in this suit opposing the quarry. Murall Limited Partnership, which owns the business park in which the IRS facility is to be located and the Coast Guard facility is already located, claims that both the Coast Guard and the IRS have expressed "serious concerns" regarding the adverse effects of blasting and dust emissions from the proposed quarry. There are also concerns about water pollution, as the Berkeley County Public Service District owns a water well (the Baker Heights well) quite close to the proposed quarry. Thus, additional intervenors were included in the suit, based upon the potential effect on their water supply.

During the permitting process, Day submitted computer models purporting to demonstrate that all the concerns over blasting, dust, noise, vibrations, and water depletion and pollution could be controlled or at least monitored and remediated. Day contended that it did not have to apply for a West Virginia National Pollutant Discharge Elimination System (NPDES) regarding the water purity, but proposed a model groundwater inspection system.

Upon reviewing these computer models and proposals, the DEP's review team concluded that, although the plans met the basic technical criteria, they could not say whether the plans demonstrated that the feared problems with blasting, dust, noise, and water would not occur. Thus, the team recommended that the decision to approve or deny the permit application be made by applying the standards applicable to limestone surface mining found in W.Va.Code § 22A–4–1 *et seq.* (1993).

During the permitting process, two hearings were held. Day contends that this was over and above what was required by statute. On December 11, 1992, the Director denied the permit application. Day appealed the decision to the West Virginia Reclamation Board of Review (hereinafter referred to as the "Board"). Only five of the seven Board members were able to deliberate on this issue, since one position was vacant and one member recused himself. The statutory minimum required for Board action is the vote of four Board members. Day was not able to get four votes. Several intervenors also presented evidence before the Board. After taking evidence and considering the arguments of counsel, the Board refused to reverse the Director's order. Day stated that the Board refused to hear arguments regarding the need for a NPDES permit or approve the proposed groundwater injection system as not being within the Board's jurisdiction.

On June 5, 1992, Day sought a writ of mandamus in the Circuit Court of Kanawha County. On June 23, 1992, the circuit court issued an order directing the Board to compel the Director to issue the mining permit and to approve the groundwater infiltration system within ten days.[1]

1. The intervenors were not permitted to inter- vene in the writ of mandamus proceeding.

The Board appealed, and we accepted the case and granted a stay pending our final decision. In *Francis O. Day Co. v. Board of Review,* 188 W.Va. 418, 424 S.E.2d 763 (1992), we concluded that where an administrative board cannot render a decision because it lacks a quorum, it should enter an order to allow the parties to proceed to the next appeal level. We then remanded the case with directions that the circuit court hear the *Day* appeal and allow the intervenors to intervene in the case.

Upon remand, a scheduling order was entered and the intervenors and Day filed briefs which outlined their positions. The DEP decided not to file a separate brief because the previous briefs were adequate. However, the circuit court failed to hold a hearing. On July 1, 1993, the circuit court issued the following decision: "... the decision of the Director is clearly wrong in view of the reliable, substantial and probative evidence of the record and contrary to applicable law." On July 12, 1993, the DEP filed a motion to reconsider or, in the alternative, a motion for stay or order pending application for appeal. A notice was filed stating that the circuit court would hear argument on the motion on August 9, 1993. However, on August 4, 1993, without the participation of any of the intervenors, the court established a conference call between the counsel for Day and the DEP. The DEP reports that the substance of the conference call was to inform the DEP that a decision had been made cancelling the scheduled hearing, and that the motion for reconsideration for the stay was denied, but a partial stay on the extraction of the minerals was granted. Over the phone, the court ordered the Director to issue the mining permit and to approve the groundwater infiltration system.

On August 4, 1993, the same day as the telephone conference, the circuit court entered a final order and opinion, from which the DEP now appeals. The final order was the same proposed order prepared by Day's counsel on July 16, 1993. This action is the DEP's appeal from that final order.

 In the first assignment of error, the appellant alleges that the circuit court erred in using the wrong standard of review to reach its conclusion that W.Va.Code § 22A–4–10 did not apply to a permit for limestone surface mining. The circuit court employed a de novo review of the evidence to determine that the Director's decision was "clearly wrong in light of the reliable, probative and substantial evidence of the record and contrary to applicable law." We agree that the circuit court used an improper standard of review, and for the reasons stated below, reverse the August 4, 1993, order of the Circuit Court of Kanawha County.

West Virginia Code § 22A–4–1 *et seq.* (1993) deals with surface mining and the reclamation of minerals. West Virginia Code § 22A–4–1 vests jurisdiction in the Department of Energy over "all aspects of surface mining and with jurisdiction and control over land, water and soil aspects pertaining to surface-mining operations...." West Virginia Code § 22A–4–2(e) defines minerals to include "clay, flagstone, gravel, limestone, manganese, sand, sandstone, shale, iron ore and any other metal or metallurgical ore: Provided, That the term 'minerals' does not include coal."

West Virginia Code § 22A–4–2(k) defines surface mining to include: "all activity for the recovery of minerals, and all plants and equipment used in processing said minerals: Provided, That the bonding and reclamation provisions of this article shall not apply to surface mining of limestone, sandstone or sand: Provided, however, That the surface mining of limestone, sandstone and sand shall be subject to separate rules and regulations to be promulgated by the commissioner." No rules relative to limestone surface mining have been promulgated to date.

The statute at the center of this debate is W.Va.Code § 22A–4–10, which is entitled "Limitations; mandamus":

The Legislature finds that there are certain areas in the state of West Virginia which are impossible to reclaim either by natural growth or by technological activity and that if surface mining is conducted in these certain areas such operations may naturally cause stream pollution, landslides, the accumulation of stagnant water, flooding, the destruction of land for agri-

cultural purposes, the destruction of aesthetic values, the destruction of recreational areas and future use of the area and surrounding areas, thereby destroying or impairing the health and property rights of others, and in general creating hazards dangerous to life and property so as to constitute an imminent and inordinate peril to the welfare of the state, and that such areas shall not be mined by the surface-mining process.

Therefore, authority is hereby vested in the commissioner to delete certain areas from all surface-mining operations.

No application for a permit shall be approved by the commissioner if there is found on the basis of the information set forth in the application or from information available to the commissioner and made available to the applicant that the requirements of this article or rules and regulations hereafter adopted will not be observed or that there is not probable cause to believe that the proposed method of operation, backfilling, grading or reclamation of the affected area can be carried out consistent with the purpose of this article.

If the commissioner finds that the overburden on any part of the area of land described in the application for a permit is such that experience in the state of West Virginia with a similar type of operation upon land with similar overburden shows that one or more of the following conditions cannot feasibly be prevented: (1) Substantial deposition of sediment in stream beds, (2) landslides or (3) acid-water pollution, the commissioner may delete such part of the land described in the application upon which such overburden exists.

If the commissioner finds that the operation will constitute a hazard to a dwelling house, public building, school, church, cemetery, commercial or institutional building, public road, stream, lake or other public property, then he shall delete such areas from the permit application before it can be approved.

The commissioner shall not give approval to surface mine any area which is within one hundred feet of any public road, stream, lake or other public property, and shall not approve the application for a permit where the surface-mining operation will adversely affect a state, national or interstate park unless adequate screening and other measures approved by the commission are to be utilized and the permit application so provides: Provided, That the one-hundred-foot restriction aforesaid shall not include ways used for ingress and egress to and from the minerals as herein defined and the transportation of the removed minerals, nor shall it apply to the dredging and removal of minerals from the streams or watercourses of this state.

Whenever the commissioner finds that ongoing surface-mining operations are causing or are likely to cause any of the conditions set forth in the first paragraph of this section, he may order immediate cessation of such operations and he shall take such other action or make such changes in the permit as he may deem necessary to avoid said described conditions.

The failure of the commissioner to discharge the mandatory duty imposed on him by this section shall be subject to a writ of mandamus, in any court of competent jurisdiction by any private citizen affected thereby.

The Director denied Day's application for a permit based upon W.Va.Code § 22A–4–10. In the December 11, 1991, denial of the permit, the Director found that:

1. Blasting is likely to have detrimental impacts on nearby residents and facilities.

2. Airborne dust emissions are likely to have a negative impact on West Virginia University Experimental Farm and nearby residents.

3. The proposed activity is likely to have a detrimental impact on groundwater users.

4. The quarry will have a detrimental effect on the aesthetics and future use of the area.[2]

2. Attached to the DEP's brief are letters from the

Coast Guard and the IRS facility. The letters

Day claims the reason for the denial was that a limestone quarry would be almost impossible to reclaim. Thus, because W.Va.Code § 22A–4–2(k) excludes limestone mining from reclamation and bonding provisions of the statute, Day asserts that the DEP's reliance on W.Va.Code § 22A–4–10 was improper.

The Circuit Court of Kanawha County agreed and found that W.Va.Code § 22A–4–10 would not apply because of the lack of credible evidence. Specifically, the circuit court found that the first paragraph of W.Va. Code § 22A–4–10 did not apply to the Day application because it was merely a legislative finding rather than operative statutory language. In its order, the court ruled that "... there is no language elsewhere ... that empowers the Director to deny a permit for the surface mining of limestone on the basis of these legislative findings."

In paragraph 5 of W.Va.Code § 22A–4–10, the commissioner is given the authority to delete surface mining from areas where the operation would constitute a hazard to a "dwelling house, public building, school ... commercial or institutional building ... or other public property, then he shall delete such areas from the permit application before it can be approved." Several commercial properties are located near the quarry, as is the West Virginia Experimental Farm, which might be considered a school. Day argues that the Director testified that his denial of the permit was not based on the deletion power found in this paragraph: consequently, the DEP could not use that as a basis for the denial. It is interesting to note that in its claim that the Director did not use the deletion power, Day seems to be admitting that paragraph 5 of W.Va.Code § 22A–4–10 does effect limestone surface mining,

despite Day's interpretation of W.Va.Code § 22A–4–2(k) to the contrary.[3]

From a careful review of the applicable Code sections and the lower court's decision, it is clear that the Circuit Court of Kanawha County used the incorrect standard of review in reaching the conclusion found in the August 4, 1993, order. First, it was improper for the court to conduct a de novo review and substitute its opinion of the credibility of the technical evidence and expert witnesses. The correct standard of review requires that the decision of an administrative agency be upheld unless the decision is "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record" or where the agency's decision "is determined by the court to involve a clearly unwarranted exercise of discretion." W.Va.Code § 22A–4–24 (1993).[4]

■ We discussed the standard for a court's review of an administrative decision in *Randolph County Board of Education v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524, 527 (1989), where we compared statutory language and stated:

Both statutes contain virtually the same criteria for reversal of the factual findings made at the administrative level, i.e., that they are "clearly wrong in view of the reliable, probative and substantial evidence on the record as a whole." We have traditionally expressed this rule in an abbreviated fashion: Evidentiary findings made at an administrative hearing should not be reversed unless they are clearly wrong. *E.g., West Virginia Department of Health v. West Virginia Civil Service Commission,* [178] W.Va. [237], 358 S.E.2d 798 (1987); *West Virginia Department of Health v. Mathison,* [171] W.Va. [693], 301 S.E.2d 783 (1983); *Vosberg v. Civil Service Commission,* 166 W.Va. 488, 275 S.E.2d

show concern over the impact dust and blasting would have on the sensitive and expensive computer systems that would be installed in the Coast Guard and IRS facilities.

3. The circuit court also erred in its summary proceeding in this case. This Court ordered that the circuit court conduct an administrative appeal as the "next highest tribunal" and grant the intervenors' motion to intervene. The circuit court essentially refused to grant the intervenors'

motion to intervene because they were not permitted to participate. The hearing scheduled for August 9, 1993, which included the intervenors, was summarily cancelled and a telephone conference between Day and the DEP, held by Judge Zakaib, was conducted without any intervenors being a party to the conference.

4. This same language was in the earlier version of W.Va.Code § 22A–4–24.

640 (1981); *Billings v. Civil Service Commission,* 154 W.Va. 688, 178 S.E.2d 801 (1971).

In reaching the decision below, the Kanawha County Circuit Court found the DEP's order to be "clearly erroneous in light of the reliable, substantial, and probative evidence on the record and contrary to applicable law".

■ The simple fact that a court recites the "magic" statutory words and finds that the order of an agency is "clearly wrong" based upon the standard set forth in W.Va. Code § 22A–4–24 does not make it so without proof. In this case, the lower court pointed to the definitional section of W.Va. Code § 22A–4–2(k), which excludes limestone, sandstone, and sand surface mining from the bonding and reclamation provisions of that article. Thus, if limestone surface mining was excluded from all reclamation provisions, then the DEP could not use W.Va.Code § 22A–4–10 as a basis for refusing to grant the limestone quarry surface mining permit.

■ While we agree that the statute was intended to exclude limestone surface mining from the bonding and reclamation provisions in the article, we believe the Legislature intended the exclusion to be limited only to those provisions which would force a limestone quarry to be reclaimed after the permit was granted and the quarry dug. A careful examination of the first and second paragraphs of W.Va.Code § 22A–4–10 shows that the Legislature also intended that the DEP have the authority to exempt certain areas from surface mining altogether. The second paragraph states that "[t]herefore, authority is hereby vested in the commissioner to delete certain areas from *all* surface-mining operations." (Emphasis added.) Although Day argues that the Director admitted that he did·not use the deletion power found in the fifth paragraph in denying the permit, the use of the word "therefore" at the beginning of the second paragraph links the phrase "all surface mining operations" to the previous paragraph, in which the Legislature showed its very explicit intent to disallow surface mining if any of the dangers listed in that paragraph existed. " ' "The primary object in construing a statute is to ascertain and give effect to the intent of the legislature." Syl.Pt. 1, *Smith v. State Workmen's Compensation Comm.,* 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syl.Pt. 2, *State ex rel. Fetters v. Hott,* 173 W.Va. 502, 318 S.E.2d 446 (1984)." Syl. pt. 2, *Lee v. West Virginia Teacher's Retirement Board,* 186 W.Va. 441, 413 S.E.2d 96 (1991).

■ " 'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syl.Pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968)." Syl. pt. 1, *Courtney v. State Dept. of Health of West Virginia,* 182 W.Va. 465, 388 S.E.2d 491 (1989). Unlike many other words or phrases, "all" is not susceptible to ambiguous interpretations—"all" means everything as opposed to nothing. Further, W.Va.Code § 22A–4–2(k) excepts limestone surface mining from the reclamation and bonding "provisions of this article" only, not the entire article. Thus, the language demonstrates the clear legislative intent that reclamation should otherwise be subject to the purview of this statute.

■ The exclusion found in W.Va.Code § 22A–4–2(k) exempts limestone surface mining from the bonding and reclamation provisions of the statute only after the permit is granted. Prior to the granting of a permit to surface mine, the Director of the DEP retains the authority to refuse to grant a limestone, sandstone or sand surface mining permit based upon any of the criteria found in W.Va.Code § 22A–4–10. Once a permit is granted, the permit holder is excluded from the surface mining bonding and reclamation requirements otherwise found in this statute. We strongly suggest, however, that in order to avoid confusion in the future, the DEP promulgate and implement the separate rules and regulations relating to limestone, sandstone, and sand surface mining which were discussed in W.Va.Code § 22A–4–2(k).

■ Consequently, we find that the Director's order did not involve a clearly unwarranted exercise of discretion as discussed in W.Va.Code § 22A–4–24. We also hold that the Director's decision was not clearly

erroneous, in light of the reliable, probative, and substantial evidence to the contrary. After reviewing the reams of evidence available, it is obvious to this Court that both sides presented credible experts with credible testimony. The issues appear to have been fully addressed. In light of that evidence, we cannot say that the Director's decision was clearly erroneous.

Accordingly, we reverse the August 4, 1993, order of the Circuit Court of Kanawha County and reinstate the December 11, 1991, order of the Director of the DEP.

Reversed.