IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**PATRICIA W.,**
**Petitioner Below, Petitioner**

**FILED**
**November 1, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-15**     (Bd. of Review No. 21-BOR-2494)

**WEST VIRGINIA DEPARTMENT OF**
**HEALTH AND HUMAN RESOURCES,**
**Respondent Below, Respondent**

### MEMORANDUM DECISION

Petitioner Patricia W.[1] appeals the December 15, 2022, amended order of the West Virginia Department of Health and Human Resources' Board of Review ("Board of Review"). Respondent West Virginia Department of Health and Human Resources ("Department") filed its response.[2] Patricia W. filed her reply. The issue on appeal is whether the Board of Review erred in upholding the Department's administrative finding of maltreatment against Patricia W., regarding children who were placed in her home by the Department as a kinship/relative placement.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board of Review's decision to uphold the Department's finding of maltreatment. Accordingly, a memorandum decision reversing that decision is appropriate under the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure.

On July 17, 2020, the Department was assigned a referral to investigate allegations of maltreatment by Patricia W. against her grandchildren, A.W., J.C., and A.C.[3] All three children were in the legal and physical custody of the Department, which had temporarily

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[2] Patricia W. is represented by Sarah L. Petitto-Meyers, Esq., and Ambria M. Britton, Esq. The Department is represented by Chaelyn W. Casteel, Esq.

[3] This same referral also alleged maltreatment by Patricia W.'s husband, Bryan W., which was upheld by the Board of Review. Bryan W. has filed his own appeal, ICA Case No. 23-ICA-16, that this Court will address by separate decision.

1

placed those children in Patricia W.'s home as a kinship/relative placement. As part of the home study approval process, Patricia W. executed several documents, including a document acknowledging that she agreed to adhere to the Department's discipline policy. This acknowledgment stated:

> The kinship/relative provider will comply with the discipline policy. Punishments of a physical nature, including hitting on the body in any manner, or any punishment that subjects a child to verbal abuse, ridicule, or intimidation is strictly prohibited. Children shall be disciplined with kindness and understanding[.] The above issues have been addressed or discussed with the kinship/relative caretaker(s). The caretaker(s) understand that this placement is a temporary placement and that the child/children are in the custody of the DHHR. The caretaker(s) agree to cooperate and comply with the above[-]mentioned issues, which were discussed with them.

On July 17, 2020, two Department workers were accompanied by law enforcement to Patricia W.'s home to remove the children, pending its internal investigation of the allegations.[4] Upon arrival, the Department workers informed Patricia W. of the referral and informed her the children were being removed from the home. According to the Department, Patricia W. became irate, yelling at the Department workers and the children. This included Patricia W. blaming the children for the removal, causing A.W. to cry.

According to the Family Functioning Assessment ("FFA") that was completed by the Department to reflect the findings of its investigation, the Department substantiated maltreatment by Patricia W. in the form of psychological and/or emotional injury based upon her conduct in the presence of the children, as observed by the Department workers. The substantiation precluded Patricia W. from further consideration as a kinship/relative or foster placement.

Patricia W. challenged the Department's findings of maltreatment, and a hearing was held before the Board of Review on March 29, 2022. At the hearing, the Board of Review heard testimony from the investigating Department workers. This testimony recalled that Patricia W. repeatedly berated the workers and the children, calling the children "hellions" and "peons." Patricia W. testified, disputing the accuracy of the Department workers' testimony, and refuting the maltreatment allegations against her.

On April 12, 2022, the Board of Review entered its initial final order, finding that the Department properly substantiated psychological and/or emotional maltreatment by Patricia W. based upon the Department workers' observations from the July 17, 2020,

---

[4] The record does not state what the original allegations were in the referral, and the Department's finding of maltreatment, in addition to the Board of Review's order, rest solely on Patricia W.'s actions, as alleged, from the children's removal on July 17, 2020.

removal. The Board of Review found that while Patricia W. denied calling the children "hellions" and "peons," she did testify that she "may have" told the children to "get the hell out of her home[.]" The Board of Review found this evidence to be consistent with the FFA, including the Department's opinion that Patricia W.'s conduct towards the children was outrageous. The Board of Review further concluded that the FFA was more credible than Patricia W.'s testimony. Ultimately, it was concluded that the evidence supported the substantiation of psychological and/or emotional maltreatment against Patricia W.

Patricia W. appealed this decision to circuit court.[5] Before the circuit court, she argued that newly obtained bodycam footage from the law enforcement officer on scene during the removal contradicted the testimony of the Department workers regarding Patricia W.'s emotional maltreatment of the children.[6] By order entered on September 23, 2022, the circuit court remanded the matter to the Board of Review with direction to consider the bodycam footage and enter an amended order in the matter.

In accordance with the circuit court's directive on remand, the Board of Review reviewed the bodycam footage, and on December 15, 2022, issued an amended order. In its amended order, the Board of Review found, in part:

> Upon review of the bodycam evidence provided by [Patricia W.], there is no change to the original [Board of Review] decision. The bodycam footage provided shows the day of the removal of the children from [Patricia W.'s] home, from just prior to entering the home until shortly after the children left with [Department] staff. This footage shows the intent of Patricia [W.] to inflict emotional abuse and does nothing to change the physical abuse finding against Bryan [W.]
>
> In the footage provided, Patricia [W.] called the children names[,] which slightly differed from the names previously noted. Instead of calling the children 'hellions' and 'peons,' [Patricia W.] called them 'hellions' and 'little liars.' The point remains the same: [Patricia W.] intended to inflict emotional abuse through name-calling and the video evidence only clarified this.

---

[5] The circuit court retained jurisdiction over the Board of Review's order because it was entered prior to June 30, 2022. *See* W. Va. Code § 51-11-4(b)(4) (2022) (stating this Court only has jurisdiction over final administrative decisions entered after June 30, 2022).

[6] Before the circuit court, Patricia W. also argued that the Department workers failed to interview her as part of its investigation. On remand, the ALJ found that allegations could be substantiated without first interviewing the alleged perpetrator(s) of abuse. Patricia W. does not challenge that finding in this appeal. Instead, Patricia W. focuses solely on the bodycam footage.

[Patricia W.] was calling the children names before they were in the room, but as the video evidence revealed, she was unnecessarily raising her voice to do so. [Patricia W.] was calling the children names in the course of telling Bryan [W.] to bring the children downstairs. Because [Bryan W.] was directly beside [Patricia W.] when she was calling the children names in a raised voice, it is reasonable to conclude the children were the intended audience.

Once the children were on the bodycam footage, [Patricia W.] targeted [A.W.] for blame, further demonstrating her intent to inflict emotional abuse against the child. [Patricia W.] specifically blamed [A.W.] for the removal, [and] further insinuated the child was a liar[.] The 'abused child' definition [under West Virginia Code § 49-1-201 (2018),] includes both physical and emotional injury, and the intentional infliction of injury as well as the *attempt* to inflict such injuries.[7] The [Department] was correct to substantiate child maltreatment against Patricia [W.] in the form of emotional abuse.

This amended order went on to find that the evidence wholly contradicted the testimony of Patricia W., who testified that the maltreatment did not occur. This amended order is now on appeal to this Court.

This appeal is governed by West Virginia Code § 29A-5-4(g) (2021), which provides:

The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the agency;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;

---

[7] West Virginia Code § 49-1-201 (2018) defines an "abused child" as:

A child whose health or welfare is being harmed or threatened by a parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home. Physical injury may include an injury to the child as a result of excessive corporal punishment[.]

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g); *accord* W. Va. Code § 16-1-22a(c) (2023) (designating West Virginia Code § 29A-5-4 as governing standard of review for Board of Review appeals); W. Va. Code § 49-4-601b(b) (2020) (a person has right to appeal Board of Review decision to court designated under West Virginia Code §§ 29A-5-1 to -5)."The 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume the agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). *See also,* Syl. Pt. 1, in part, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996) (on appeal, a court may not overturn a finding simply because it would have decided case differently).

Further, an appellate court is required to give deference to an administrative decision unless it is clearly wrong. *See* Syl. Pt. 1, in part, *Muscatell v. Cline*, 196 W. Va. 588, 590, 474 S.E.2d 518, 520 (1996) ("findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong."); Syl. Pt. 1, *Francis O. Day Co., Inc. v. Dir. Of Env't Prot.*, 191 W. Va. 134, 135, 443 S.E.2d 602, 603 (1994) ("[e]videntiary findings made at an administrative hearing should not be reversed unless they are clearly wrong."); *In re Queen*, at 444, 473 S.E.2d 483 at 485, syl. pt. 1. ("[a]n adjudicative decision of [an administrative agency] should not be overturned by an appellate court unless it was clearly erroneous, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Review under this standard is narrow and the reviewing court looks to the [administrative agency]'s action to determine whether the record reveals that a substantial and rational basis exists for its decision."). With these principles in mind, we now turn to this instant appeal.

Patricia W.'s sole argument on appeal is that the bodycam footage refutes the Department's basis for imposing its finding of maltreatment. Specifically, it is argued that the Department workers' testimony exaggerated Patricia W.'s conduct based upon her initial reaction after learning of the allegations and planned removal of the children. According to Patricia W., this conduct was isolated and outside the presence of the children, and the totality of the bodycam footage establishes that she displayed a calm, nurturing, and comforting demeanor toward the children throughout the removal process, which does not rise to the level of psychological and/or emotional maltreatment. We agree.

We find that the Board of Review's findings against Patricia W. were clearly wrong in view of the reliable, probative, and substantial evidence on the whole record. From the outset, the only evidence of record regarding Patricia W.'s substantiation was the testimony of the Department workers and Patricia W., and the bodycam footage. Of those sources,

clearly, the bodycam footage was the best evidence in the matter. Thus, having reviewed the bodycam footage in its entirety, the Court finds the evidence does not support the Department's finding of maltreatment against Patricia W., as the Department inflated the severity of Patricia W.'s conduct on July 17, 2020.

The Board of Review concluded that it was reasonable to infer that Patricia W. intended to inflict psychological and/or emotional harm upon the children by referring to them as "hellions" and "little liars" because she made the statement using an elevated tone of voice, outside of the presence of the children. Upon review, we find this conclusion unreasonable considering the evidence. While the bodycam footage does show Patricia W. referring to the children as "hellions" and "little liars," when directing her husband, Bryan W. to get the children, it was only stated in the presence of the Department workers, law enforcement, and Bryan W. The children were not present, nor were they close by, as evidenced by the fact that the bodycam footage shows the children emerging with Bryan W., down a long hallway, several rooms away, from the opposite end of the home. Further, while Patricia W.'s tone was elevated when she made this statement, given the distance between Patricia W. and the actual location of the children, it is not plausible that the children were the intended audience of Patricia W.'s statement.

The Board of Review also found that Patricia W.'s conduct towards A.W. equated to an attempt to inflict emotional abuse on that child, thereby meeting the definition of an "abused child," within the meaning of West Virginia Code § 49-1-201. It based this conclusion on the bodycam footage, which, in the Board of Review's opinion, showed Patricia W. making a statement to A.W. that blamed her for the removal, causing the child to cry. It also found that Patricia W. could be overheard insinuating that the child was a liar, while speaking to her and the other children after they were placed in a Department workers' vehicle. During the removal, Patricia W. can be seen on the bodycam footage stating, "you did this," to A.W. as she assists Bryan W. with gathering the children or the Department. This statement was made in normal tone of voice. The bodycam footage also shows Patricia W. comforting and consoling the children as they exit the home and are placed in Department workers' vehicles. Once placed in the vehicles, Patricia W. could be observed speaking with A.W. and the other children in a normal tone of voice, where she comforts the children, reminds the children that they have been taught to always tell the truth, and that there are life consequences for being dishonest. However, we disagree with the Board of Review's legal conclusion that this evidence is sufficient to support a finding of maltreatment against Patricia W.

We find no evidence that Patricia W.'s statements were intended to inflict psychological and/or emotional abuse upon the children. That is not to say, however, that this Court condones any of Patricia W.'s conduct as complained of by the Department in this case, nor is this Court offering the opinion that the children were not upset, affected, or confused by their removal from Patricia W.'s home. Nevertheless, we find Patricia W.'s demeanor was largely calm, with two brief and isolated moments of debatable conduct.

6

Thus, because this conduct can only be found, at best, to be an isolated incident, we are of the opinion that it alone cannot rise to the level of maltreatment. As our Supreme Court of Appeals has previously noted, "neither parents, nor the courts through exercise of the State's *parens patriae* powers, can ensure a childhood experience entirely free from emotional upset and occasional unpleasantness which obtains from the complexities of human relationships." *In re Lilith H.*, 231 W. Va. 170, 179, 744 S.E.2d 280, 289 (2013). Therefore, this Court simply cannot find, under these facts, that Patricia W.'s conduct on July 17, 2020, created an environment that rises to a level of psychological or emotional abuse; let alone support a finding that this limited conduct, without more, is sufficient to substantiate maltreatment in this case.

Accordingly, we find that the Board of Review's decision to uphold the Department's maltreatment substantiation against Patricia W. was clearly wrong and not substantially supported by the evidence. Therefore, we reverse the Board of Review's finding of maltreatment against Patricia W., as contained in its December 15, 2022, amended order.

Reversed.

**ISSUED:** November 1, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen