# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**PHILLIP ALLEN PETERSON, M.D.,**
**Respondent Below, Petitioner**

**FILED**
**February 28, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-197**     (W. Va. Bd. of Med., Case No. 22-86-W)

**WEST VIRGINIA BOARD OF MEDICINE,**
**Petitioner Below, Respondents**


## MEMORANDUM DECISION

Petitioner Phillip Allen Peterson, M.D. ("Dr. Peterson") appeals the West Virginia Board of Medicine's ("Board") April 12, 2024, final decision and order imposing a $500 fine and requiring that Dr. Peterson pay the costs and expenses of the disciplinary proceeding. The Board timely filed a response.[1] Dr. Peterson filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's final decision and order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Dr. Peterson holds an active status license to practice medicine and surgery in the state of West Virginia, initially issued in 1988. Physician medical licenses issued by the Board are subject to renewal on a fixed, two-year schedule. To be eligible for medical license renewal, physicians must successfully complete all required continuing medical education ("CME") training during the preceding two-year cycle. *See* W. Va. Code § 30-3-12(b) (2017); W. Va. C.S.R. § 11-6-3 (2018). As part of the renewal application, physicians must complete a Certificate of Continuing Education Compliance, which requires the renewing physicians to attest that they have successfully completed all CME requirements during the preceding two-year CME reporting period. For physicians who renewed their West Virginia medical license in 2021, the CME reporting period was July 1, 2019, through June 30, 2021.

On June 8, 2021, Dr. Peterson submitted a renewal application for the period of July 1, 2021, through June 30, 2023. On his 2021 renewal application, Dr. Peterson certified to

---

[1] Dr. Peterson is represented by C. William Davis, Esq., and William L. Mundy, Esq. The Board is represented by Greg S. Foster, Esq., and Jamie S. Alley, Esq.

the Board that he completed all CME requirements during the applicable reporting period, including completion of a Board-approved controlled substance course.

The Board randomly selected Dr. Peterson for a CME audit to verify his compliance with all applicable CME requirements. Dr. Peterson responded to the CME audit and included documentation showing that he completed his basic CME obligation of 50 CME hours, and he produced a CME certificate for having completed a 21-hour CME entitled PBI Prescribing Course: Opioids, Pain Management and Addiction on January 9-10, 2021. The PBI Course was not previously approved by the Board as a controlled substance course appropriate for licensees who were required to satisfy this CME requirement.[2]

On January 18, 2022, the Board notified Dr. Peterson of his CME noncompliance because he failed to complete an approved controlled substance course during the applicable reporting period. Over six months after the end of the applicable CME reporting period, on January 28, 2022, Dr. Peterson completed a Board-approved controlled substance training course.

Dr. Peterson was referred to the Board's complaint committee for his noncompliance with the Board's CME requirements. On September 11, 2022, the Complaint Committee authorized Initiated Complaint No. 22-86-W against Dr. Peterson. When the parties were unable to resolve the complaint by agreement, the Complaint Committee determined that probable cause existed to institute disciplinary charges against Dr. Peterson for violating the Board's rule requiring completion of specific controlled substance CME training. CME noncompliance for failure to complete the mandatory Board-approved controlled substance course is the most common CME deficiency referred to the Board's complaint committee each year. The consistent fine imposed by the Complaint Committee for a licensee's CME noncompliance for failure to complete the mandatory Board-approved controlled substance course is a $500 administrative fine pursuant to a voluntary consent order. The Board cannot impose any disciplinary action against a licensee, including an administrative fine, without either a voluntary consent order or a Board order. CME noncompliance complaints are typically resolved without the initiation of formal disciplinary charges or a public hearing. Consistent with Board precedent, and on multiple occasions after Complaint No. 22-86-W was initiated, Dr. Peterson was offered the opportunity to resolve Complaint No. 22-86-W by his agreement to a Consent Order imposing a $500 administrative fine. After the parties were unable to

---

[2] Dr. Peterson was ordered to attend the PBI Course as a disciplinary sanction by the Virginia Board of Medicine pursuant to a consent order entered on November 20, 2020. The Virginia consent order explicitly prohibited Dr. Peterson from using the CME hours he earned from the PBI Course toward meeting his CME obligations in Virginia. The Board and Dr. Peterson entered a reciprocal consent order in West Virginia. Although prohibited from applying the PBI course credits to Virginia CME requirements, he now seeks to apply those same credits to satisfy his West Virginia CME requirements.

resolve the complaint by agreement, the Complaint Committee determined that probable cause existed to institute disciplinary charges against Dr. Peterson due to his CME noncompliance.

The Board issued the Complaint, Notice of Hearing, Pre-Hearing Directives, and Protective Order ("CNOH") in this matter on September 20, 2023, setting forth a single count alleging professional misconduct by Dr. Peterson arising from a Board-initiated complaint, identified as Complaint No. 22-86-W. On December 7, 2023, the hearing examiner granted the Board's motion in limine to prohibit Dr. Peterson from calling Dr. David Mullins, the Chair of the Board's Complaint Committee, Dr. Ashish Sheth, the President of the Board, and Dr. Matthew Christiansen, the Secretary of the Board, as witnesses during the evidentiary hearing on the Complaint against him. On December 13, and 14, 2023, the hearing examiner held an evidentiary hearing. During the hearing, the Board presented testimony from its Executive Director Mark Spangler ("Executive Director"). The Board also called Dr. Peterson as a witness. Dr. Peterson testified and presented testimony from Drs. Jennifer Schneider and Lee Smith. The evidentiary hearing was recorded and transcribed by a court reporter, and the parties were given an opportunity to obtain a copy of the transcript. On March 5, 2024, the parties timely submitted proposed findings of fact and conclusions of law to the hearing examiner.

The hearing examiner's recommended decision was entered on March 19, 2024, and the Board's final decision and order, which adopted the recommended decision with minor modifications, was entered on April 12, 2024. In the orders, both the hearing examiner and the Board determined that Dr. Peterson failed to perform a statutory and legal obligation of a licensee of the Board in violation of West Virginia Code § 30-3-14(c)(17) (2022) and 11 C.S.R. 1A §§ 12.1.o, and 12.1.bb. (2023) and that the Board met its burden of proving the substantive allegations of professional misconduct set forth in Count 1 of the CNOH by clear and convincing evidence. As a result, the Board issued the following sanctions against Dr. Peterson: (1) a fine of $500; and (2) payment to the Board for the costs of the proceeding. Dr. Peterson appeals the Board's final decision.

The West Virginia Administrative Procedures Act governs this Court's standard of review in administrative appeals, including appeals from final disciplinary orders of the Board:

(g) The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:

(1) In violation of constitutional or statutory provisions;

3

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedures;

(4) Affected by other error of law;

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g) (2021). With this standard in mind, we turn to Dr. Peterson's assignments of error.

In his first assignment of error, Dr. Peterson asserts that the Board's decision was clearly wrong because no Board-approved controlled substance CME courses were available during the applicable reporting period and therefore, it was impossible for Dr. Peterson to comply. Dr. Peterson argues that no Board-approved controlled substance CME courses were available because the Board improperly delegated its CME course approval duties to the Board's Executive Director and therefore the available CME courses were not technically "Board-approved" as required by 11 C.S.R. 6 § 3.3 (2018).

To determine whether an agency's decision is clearly wrong, this Court presumes that the agency's decision is "valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, in part, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). Here, the Board's decision on this issue was supported by substantial evidence and a rational basis. At the evidentiary hearing, the Executive Director testified that since he began the position, it was his duty to approve CME courses that satisfy the CME requirements. He further testified that his review of CME courses submitted by CME providers is an objective administrative review simply to verify that a submitted CME course complies with pre-set components that were already approved by the Board.

The Board's decision on this issue is also supported by a rational basis. Since the Board regularly meets on two-month intervals, delegation of CME course approval authority is necessary for the Board to comply with the twenty-day deadline established in its CME rule to respond to CME provider requests for course approval. Based on our review, there is no provision in the Board's CME rules that restricts the Board from delegating its authority to approve CME courses to its Executive Director. Similarly, there is no provision in the West Virginia Medical Practice Act, West Virginia Code §§ 30-3-1 to 30-3-18, which requires the Board to follow any particular procedure when delegating authority to its Executive Director or any other part of its staff.

4

Dr. Peterson next asserts, in his second assignment of error, that the Board violated his due process rights under Article III, § 10 of the Constitution of West Virginia and United States Constitution, Amendment V and violated provisions of West Virginia Code § 29A-5-2(a) (1964) by preventing Dr. Peterson from presenting the testimony of Drs. Sheth, Christiansen, and Mullins during the evidentiary hearing and from vouching the record with their testimony. Dr. Peterson argues that these individuals could have provided relevant testimony regarding: (1) the existence of a Board-approved controlled substance training during the applicable time period; (2) the process for a course to become Board-approved; (3) the alleged delegation of the Board's duty to approve such training; the procedure followed by the Complaint Committee in initiating a complaint against Dr. Peterson; (4) the investigation of the allegations against Dr. Peterson; and (5) factors considered by the Board when it determined that probable cause existed for the complaint. Dr. Peterson argues that these are all facts of consequence so their proposed testimony would have been relevant. Conversely, the Board argues that the hearing examiner properly excluded Dr. Peterson from compelling three Board members to testify at the hearing because their participation was wholly unnecessary, they were not proper witnesses, and the information sought was not relevant, material, or probative on any fact of consequence.

In general, "a party 'is not constitutionally entitled to present irrelevant evidence.'" *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 215, 470 S.E.2d 162, 169 (1996) (quoting *Doe v. United States*, 666 F.2d 43, 47 (4th Cir. 1981)). The Supreme Court of Appeals of West Virginia has held that "[e]videntiary findings made at an administrative hearing should not be reversed unless they are clearly wrong." Syl. Pt. 1, *Francis O. Day Co., Inc., v. Dir., Div. of Env't Prot.*, 191 W. Va. 134, 443 S.E.2d 602 (1994).

Below, the hearing examiner determined that the testimony of the Board members was not relevant, material, or probative on any fact of consequence. We find nothing clearly wrong with this determination. At the hearing, the Board's Executive Director testified at length regarding the administrative review process for approving CME training courses, explaining the duty was delegated to him by the Board and the Board provided him with the components it required for approving CME training courses. The hearing examiner found that the Executive Director's testimony was credible and sufficient, and that any further testimony on Board processes or procedures from the Board members was not relevant or material to the substantive issues in this case or the ultimate outcome.

Dr. Peterson also asserts that he should have been permitted to question the Board members regarding the preliminary probable cause determination made by the Board's complaint committee. In excluding testimony from the Board members on its internal probable cause determination, the hearing examiner determined that a probable cause finding by the complaint committee is simply a charge, not a final decision of the Board and the Board members are not proper witnesses because the allegations in the complaint are tested by the evidence presented to the hearing examiner. We agree with the hearing

5

examiner and find that excluding the Board members from testifying was supported by a rational basis, and therefore not clearly wrong.

Dr. Peterson further contends that his constitutional rights were violated when the hearing examiner denied him the right to vouch the record with testimony from the excluded Board members. West Virginia Code § 29A-5-2(a) provides that "[a]ny party to any such hearing may vouch the record as to any excluded testimony or other evidence." W. Va. Code § 29A-5-2 (1964). The hearing examiner determined that vouching the record by presenting testimony from the excluded witnesses in this case was unnecessary. Here, the hearing examiner allowed Dr. Peterson's counsel to offer what he believed to be the substance of the expected testimony and denied Dr. Peterson's request to vouch the record through testimony. Because he was afforded the opportunity to offer the substance of the expected testimony, we find that Dr. Peterson's constitutional rights were not violated and defer to the hearing examiner's evidentiary determination on this issue.

In his final assignment of error, Dr. Peterson asserts that the Board's actions in initiating the proceedings against him and imposing disciplinary sanctions against him were arbitrary and capricious, an abuse of discretion, or an unwarranted exercise of discretion. In support of this assertion, Dr. Peterson argues that the Board is mandated to protect the public interest, safety, health, and welfare and his completion of the 21-hour unapproved course provided more protection to the public than the 3-hour Board-approved course he completed following the applicable reporting period. In response, the Board argues that there were over 28 Board-approved courses eligible to satisfy the controlled substance CME requirement during the applicable period and the courses were clearly published on the Board's website. Dr. Peterson received several communications from the Board reminding him of the requirement to complete a Board-approved controlled substance CME course, which included hyperlinks to such courses. Nevertheless, Dr. Peterson failed to complete a Board-approved course in a timely manner.

The hearing examiner determined that the Board established the following at the hearing: (1) the Board has a CME requirement for certain physicians who prescribe, administer, or dispense controlled substances, to complete one 3-hour course on drug diversion and best practices for prescribing controlled substances during each two-year license renewal cycle; (2) the Board made multiple CME courses that complied with the controlled substance CME requirements readily available; (3) the Board issued several reminders to Dr. Peterson that he must complete the controlled substance CME requirements and provided information on how to find approved courses; (4) that Dr. Peterson did not complete a Board-approved controlled substance CME course during the applicable two-year reporting period as required; and (5) that Dr. Peterson was subject to the same discipline that the Board would impose on any other similarly situated physician, namely a $500 fine. Based on our review of the record, the Board's decision to discipline Dr. Peterson was supported by substantial evidence, and was therefore not arbitrary and capricious, an abuse of discretion, or an unwarranted exercise of discretion.

6

For the foregoing reasons, we affirm the Board's April 12, 2024, final decision and order.

Affirmed.


**ISSUED:** February 28, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White